IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ROBERT MEZA, | ) | |
| | ) | |
| Petitioner, | ) | 17 C 1980 |
| | ) | |
| v. | ) | Judge John Z. Lee |
| | ) | |
| TERI KENNEDY, Warden, | ) | |
| Pontiac Correctional Center, | ) | |
| | ) | |
| Respondent. | ) | |

**MEMORANDUM OPINION AND ORDER**

Robert Meza has filed a petition for a writ of *habeas corpus* pursuant to 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), challenging his conviction for first-degree murder. Meza alleges that a non-testifying codefendant's statement was improperly introduced at trial in violation of his Sixth Amendment right to confront his accusers, and that the jury may have been infected with anti-gang bias, in violation of his right to a fair and impartial jury. Meza also contends that his trial counsel was ineffective for failing to prevent both errors. Teri Kennedy, Warden of Pontiac Correctional Center ("Respondent"),[1] argues that Meza's claims are either procedurally defaulted or meritless. For the following reasons, the petition [1] is denied.

---

[1] Rule 2(a) of the Rules Governing Section 2254 *habeas* cases provides that the proper respondent is the state officer having custody of the petitioner. *See Bridges v. Chambers*, 425 F.3d 1048, 1049 (7th Cir. 2005). Teri Kennedy is currently the Warden of Pontiac Correctional Center. Accordingly, the Court substitutes Kennedy as Respondent pursuant to Federal Rule of Civil Procedure 25(d).

## Factual Background[2]

Meza's conviction arises out of the murder of Lorenzo Salazar-Cortez on September 15, 2007. *See* Resp't Ex. C, Pet'r Direct Appeal Br. at 2, ECF No. 16-3. Salazar-Cortez was shot four times through a basement window of an apartment building in Addison, Illinois. *See id.* Within hours of the shooting, graffiti appeared nearby denigrating the Latin Kings street gang, suggesting that members of a rival gang, the Imperial Gangsters, had been responsible for the shooting. *See id.*; Resp't Ex. A at 2. At the time, the Imperial Gangsters were attempting to "move into" the area surrounding the apartment building, which was part of Latin Kings territory. Resp't Ex. A at 2. Salazar-Cortez did not belong to a gang and appeared to have been an innocent victim. *Id.*

Several days after the shooting, police met with a paid informant, Candido Rosales, who said he had spoken with an Imperial Gangster named Antonio Aguilar. *Id.* Aguilar had told Rosales that the Imperial Gangsters were responsible for the shooting, and that a gang member named "Lazy" had drawn the graffiti afterward. *Id.* "Lazy" was Meza's street name. *Id.*

Rosales then wore a wire and met with Aguilar on several occasions. *Id.* at 3. During one conversation, Aguilar showed Rosales a 9-millimeter gun. *Id.* In a

---

[2] Pursuant to 28 U.S.C. § 2254(e)(1), the state courts' recitations of fact are presumptively correct in *habeas* proceedings. *See Sumner v. Mata*, 449 U.S. 539, 547 (1981). Accordingly, the Court adopts the factual account as provided in Resp't Ex. A, *People v. Meza*, No. 07-CF-2771, 2011 IL App (2d) 100001-U (Ill. App. Ct. Aug. 11, 2011), ECF No. 16-1, and Resp't Ex. B, *People v. Meza*, No. 07-CF-2771, 2016 IL App (2d) 140622-U (Ill. App. Ct. July 20, 2016), ECF No. 16-2.

subsequent recorded conversation, Aguilar said that Lazy and another individual, Carlos "Benzino" Ruiz, were "stashing," or hiding, because they were the "main [N\*\*\*as]" involved in the shooting. *Id.* Aguilar stated that Benzino was the shooter, and that Lazy's car had been used. *Id.* Aguilar further explained that they had intended to shoot one of two twin brothers—both Latin Kings—who lived in the apartment building. *Id.* at 2–3.

Aguilar was arrested and interrogated. *Id.* at 3. He initially denied knowing anything, but later admitted that the Imperial Gangsters were responsible for the shooting. *Id.* He said that Lazy was claiming responsibility for the shooting, and that Lazy had dropped him off the night of the shooting saying he had a "few things to take care of." *Id.* On the basis of this information, police arrested Meza. *Id.*

At the police station, Meza gave a videotaped statement. *Id.*; *see* Resp't Ex. B at 3. Near the beginning of the statement, the detectives told Meza that Aguilar had implicated him in the offense. Resp't Ex. A at 4. Meza asked to hear the statement, so the detectives played him a portion of Aguilar's recorded interrogation. *Id.* The audio from that portion of Aguilar's interrogation was captured in the video recording of Meza's statement. *Id.*

Meza went on to give a confession, which was recorded. He explained that on the night of the shooting, he drove Aguilar into Latin Kings territory, knowing Aguilar had a gun. Resp't Ex. B at 3. He and Aguilar tried to get into an apartment building, but the door was locked. *Id.* He followed Aguilar, who shot toward a group of people near a window. *Id.* Aguilar then ran away, and Meza drove him away from

3

the scene. *Id*. Meza later returned to the area and wrote the anti-Latin Kings graffiti, because he was a better "tagger" than Aguilar. *Id*. Aguilar kept the gun. *Id*.

Meza was charged with first-degree murder on an "accountability" theory. Resp't Ex. B at 2. Prior to trial, Meza moved to quash his arrest based on a lack of probable cause and to suppress his recorded confession as a product of the illegal arrest. Resp't Ex. A at 2. The trial court denied the motion. *See id*. at 4.

During *voir dire*, defense counsel asked prospective jurors several questions to explore potential biases. Resp't Ex. B at 2. He asked one prospective juror, "Just because a person might be in a gang, which is not a healthy organization, doesn't mean that they perhaps committed this particular murder or this particular burglary or this particular robbery; wouldn't that be fair?" *Id*. That juror expressed an ability to be fair to both sides, and ended up sitting on the jury. *Id*. Another prospective juror stated that he had friends who were police officers and often discussed "gang-related stuff" with them. *Id*. Defense counsel did not move to strike this juror, who also ended up on the jury. *Id*. Meza's attorney did not ask gang-related questions to any other members of the *venire* who were selected for the jury. *See id*. at 4.

At trial, the videotape of Meza's statement was played for the jury, including the portion in which Meza listened to Aguilar's recorded interview. Resp't Ex. A at 4. As described by the Illinois Appellate Court, "[o]n the video, although Aguilar's statements are barely audible, the detective's statements in response clearly imply that Aguilar implicated [Meza] as the shooter." *Id*. The jury also heard evidence

4

about the rivalry between the Imperial Gangsters and the Latin Kings, as well as about the graffiti that appeared after the shooting. Resp't Ex. B at 2–3.

The jury found Meza guilty, and the trial court sentenced him to 45 years of imprisonment. *Id.*

## Direct Appeal

In his direct appeal, Meza argued through counsel that there was no probable cause for his arrest and that the introduction of Aguilar's statement through the video of Meza violated his rights under the Confrontation Clause of the Sixth Amendment. *See* Resp't Ex. A at 4, 6. The Illinois Appellate Court affirmed, first concluding that there was probable cause for Meza's arrest. *Id.* at 5. As to the Confrontation issue, the court found: "Initially, we note that [Meza] did not object in the trial court to the playing of Aguilar's statement. Thus, the question is whether the plain-error rule applies, or whether defendant received ineffective assistance of counsel." *Id.* at 6. The court concluded that there was no plain error or ineffective assistance because "it [was] virtually inconceivable that the jury would ignore defendant's own admissions and convict him on the basis of Aguilar's implication." *Id.* at 6–7. Because the focus of the video was Meza's own admissions and Aguilar's statements were not a central issue, the Illinois Appellate Court determined that it was unlikely that Aguilar's taped statements affected the outcome of the case. *Id.* at 7–8.

Meza filed a petition for leave to appeal ("PLA") in the Illinois Supreme Court, again challenging the introduction of Aguilar's statements at trial. *See* Resp't Ex. F, Pet'r Direct Appeal PLA at 2, ECF No. 16-6. The Illinois Supreme Court denied the

5

PLA on January 25, 2012. Resp't Ex. G, *People v. Meza*, No. 113195 (Ill. Jan. 25, 2012), ECF No. 16-7.

### **Postconviction Proceedings**

Meza filed a *pro se* postconviction petition in June 2012. *See* Resp't Ex. H, Pet'r Postconviction Appeal Br. at 4, ECF No. 16-8. The DuPage County Public Defender filed an amended petition on his behalf, arguing that trial counsel was ineffective for not adequately examining prospective jurors about anti-gang bias and that appellate counsel was ineffective for failing to preserve this issue on appeal. *Id.* The trial court dismissed the petition, finding that, although trial counsel's performance was in fact deficient, Meza had failed to demonstrate prejudice. *Id.*

On appeal, postconviction appellate counsel raised the same issues. *Id.* at 1. The Illinois Appellate Court affirmed, agreeing with the trial court that Meza had not been prejudiced by counsel's ineffective performance due to the "overwhelming" evidence against him. Resp't Ex. B at 4–7.

Meza, proceeding *pro se*, filed a PLA in the Illinois Supreme Court. Resp't Ex. K, Postconviction PLA, ECF No. 16-11. In the PLA, he challenged the notion that the evidence against him was overwhelming. *See id.* at 2. He further contended that the presentation of gang-related evidence was inherently prejudicial and that trial counsel's failure to inquire into potential jurors' bias compounded the prejudice. *See id.* at 10–12. The Illinois Supreme Court denied the PLA on November 23, 2016. Resp't Ex. L, *People v. Meza*, No. 121242 (Ill. Nov. 23, 2016), ECF No. 16-12.

## Federal *Habeas* Claims

In his *habeas* petition, Meza raises two grounds for relief. In Ground One, he argues that he was denied his rights under the Confrontation Clause of the Sixth Amendment, when Aguilar's statement implicating him was introduced at trial through Meza's own videotaped confession, and that his trial counsel was ineffective for failing to object to the introduction of the statement. In Ground Two, Meza contends that he was denied the right to a fair and impartial jury and the assistance of counsel due to his counsel's failure to adequately examine and strike prospective jurors for anti-gang bias.[3]

## Legal Standard

A writ of *habeas corpus* will be granted only if the Petitioner demonstrates that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Under AEDPA, the Court may not grant *habeas* relief unless the state court's decision on the merits was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, or the state-court decision is based on an unreasonable determination of the facts. 28 U.S.C. § 2254(d).

---

[3] Respondent characterizes Meza's petition as raising four grounds for relief. Meza objects to this characterization, so the Court will use Meza's numbering system for the sake of consistency and clarity. Of course, the Court in its analysis has construed Meza's petition liberally and considered every possible ground for relief reasonably presented. *See Ambrose v. Roeckeman*, 749 F.3d 615, 618 (7th Cir. 2014) ("We have repeatedly emphasized that *pro se* petitions are to be construed liberally, and should be held to standards less stringent than formal pleadings drafted by attorneys.").

"A federal habeas court may issue the writ under the 'contrary to' clause if the state court applies a rule different from the governing law set forth in [the Supreme Court's] cases, or if it decides a case differently than [the Supreme Court has] done on a set of materially indistinguishable facts." *Bell v. Cone*, 535 U.S. 685, 694 (2002). "An 'unreasonable application' occurs when a state court 'identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts' of petitioner's case." *Rompilla v. Beard*, 545 U.S. 374, 380 (2005) (quoting *Wiggins v. Smith*, 539 U.S. 510, 520 (2003)).

Clearly established federal law consists of the "holdings, as opposed to the *dicta*, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." *Carey v. Musladin*, 549 U.S. 70, 74 (2006) (quoting *Williams v. Taylor*, 529 U.S. 362, 412 (2000)). The state court is not required to cite to, or even be aware of, the controlling Supreme Court standard, as long as the state court does not contradict that standard. *Early v. Packer*, 537 U.S. 3, 8 (2002). The Court begins with a presumption that state courts both know and follow the law. *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002). Moreover, the Court's analysis is "backward-looking." *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011). The Court is limited to reviewing the record before the state court, as well as the Supreme Court precedent in existence, at the time of the state-court decision. *Id.*; *Greene v. Fisher*, 132 S. Ct. 38, 44 (2011).

"AEDPA's standard is intentionally 'difficult [for Petitioner] to meet.'" *Woods v. Donald*, 135 S. Ct. 1372, 1376 (2015) (per curiam) (quoting *White v. Woodall*, 572 U.S. 415, 419 (2014); *Metrish v. Lancaster*, 569 U.S. 351, 352 (2013)). "As a condition

8

for obtaining *habeas corpus* from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011). This "highly deferential standard . . . demands that state-court decisions be given the benefit of the doubt." *Woodford*, 537 U.S. at 24 (internal quotation marks omitted). *Habeas corpus* is a "guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Harrington*, 562 U.S. at 102–03 (internal quotation marks omitted). "Under § 2254(d), a *habeas* court must determine what arguments or theories supported, or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of th[e] [Supreme] Court." *Id.* at 102.

## Analysis

I. **Procedural Default**

Respondent contends that both of Meza's claims are procedurally defaulted to the extent that they raise issues beyond the ineffectiveness of trial counsel. As to Ground One, Respondent argues that the state courts decided Meza's Confrontation Clause challenge on an adequate and independent state ground. As to Ground Two,

9

Respondent argues that Meza failed to raise, at each level of the state courts, his right to a fair and impartial jury.

A claim is procedurally defaulted if the petitioner failed to fairly present it at each level of state-court review, including in a petition for leave to appeal before the state supreme court. *Guest v. McCann*, 474 F.3d 926, 929–30 (7th Cir. 2007) (citing *O'Sullivan v. Boerckel*, 526 U.S. 838, 842–46 (1999)). Additionally, a state prisoner's *habeas* claim may not be entertained by a federal court when "(1) a state court [has] declined to address a prisoner's federal claims because the prisoner ha[s] failed to a meet a state procedural requirement," and "(2) the state judgment rests on independent and adequate state procedural grounds." *Walker v. Martin*, 562 U.S 307, 316 (2011) (quoting *Coleman v. Thompson*, 501 U.S. 722, 729–30 (1991)) (internal quotation marks omitted). A state procedural rule is "adequate" if it is "firmly established and regularly followed." *Id.* (quoting *Beard v. Kindler*, 558 U.S. 53, 60–61 (2009)). And a state procedural rule is "independent" if the state court "actually relied on the state procedural rule as an independent basis for the disposition of the case." *Kaczmarek v. Rednour*, 627 F.3d 586, 592 (7th Cir. 2010).

If a claim is procedurally defaulted, a petitioner is not entitled to *habeas* relief unless cause exists for the default and actual prejudice was suffered, or a fundamental miscarriage of justice resulted in the conviction despite the petitioner's actual innocence. *Buelow v. Dickey*, 847 F.2d 420, 425 (7th Cir. 1988) (citing

*Wainwright v. Sykes*, 433 U.S. 72, 87 (1977); *Murray v. Carrier*, 477 U.S. 478, 496 (1986)).

### A. Ground One

In Ground One, Meza contends that the introduction of Aguilar's statements at trial violated his rights under the Confrontation Clause and that trial counsel was ineffective for failing to object. Respondent argues, in turn, that the substantive component of this claim is procedurally defaulted, because the state courts decided that Meza had forfeited any Confrontation Clause objection by failing to raise it at trial.

The Illinois Appellate Court declined to address Meza's Confrontation Clause claim on the merits, noting that "defendant did not object in the trial court . . . . Thus, the question is whether the plain-error rule applies, or whether defendant received ineffective assistance of counsel." Resp't Ex. A at 6. This constituted an application of Illinois's rule of forfeiture. *See id.* at 6–7 (citing *People v. Piatkowski*, 870 N.E.2d 403, 409 (Ill. 2007) ("Generally, a defendant forfeits review . . . if he does not object . . . at trial and does not raise the issue in a posttrial motion.")). The Illinois Appellate Court did go on to consider whether there was plain error—an analysis that touches on the merits of the claim. *See id.* at 6–8. But "where a state court reviews a federal constitutional claim for plain error because of a state procedural bar . . . that limited review does not constitute a decision on the merits." *Kaczmarek*, 627 F.3d at 592. Accordingly, the Illinois Appellate Court decided Meza's substantive Confrontation Clause claim on forfeiture grounds, an independent and adequate state

11

ground for purposes of *habeas* review. *See id.* As such, this aspect of Ground One is procedurally defaulted.

B. **Ground Two**

In Ground Two, Meza argues that his trial counsel failed to adequately question prospective jurors about anti-gang bias or to strike biased jurors. He contends that this failure violated both his right to a fair and impartial jury and his Sixth Amendment right to the effective assistance of counsel. Respondent argues that Ground Two is procedurally defaulted to the extent it raises a substantive claim about Meza's right to an impartial jury.

The Court agrees and concludes that this aspect of Ground Two is procedurally defaulted. In the state courts, Meza—first acting through counsel and then *pro se*—challenged only the nature of counsel's conduct and whether the evidence against him prevented any finding of prejudice. Accordingly, the state courts never had the opportunity to address whether the jury was impermissibly biased under *Irvin v. Dowd*, 366 U.S. 717, 723 (1961). If Meza wanted the state courts to analyze the existence of bias among the jurors, he should have raised that issue through one complete round of appellate review. *See O'Sullivan*, 526 U.S. at 845.

Moreover, even if this issue were not procedurally defaulted, it lacks merit. As the Supreme Court explained in *Irvin*, the burden of showing jury bias is on the challenger, and "[u]nless he shows the actual existence of such an opinion in the mind of the juror as will raise the presumption of partiality, the juror need not necessarily be set aside." 366 U.S. at 723. Here, most of the members of the *venire* were not

asked about anti-gang bias; it is therefore impossible to know if any of those individuals, who eventually were picked for the jury, held such a bias. Furthermore, although one juror expressed that he talked to police officers about "gang-related stuff," he did not express any bias one way or another and in fact stated that he could be fair to both sides. It was not an unreasonable application of *Irvin* for the trial court to conclude that such a juror could perform impartially, particularly without an objection from defense counsel. *See also Skilling v. United States*, 561 U.S. 358, 386 (2010) ("Jury selection, we have repeatedly emphasized, is 'particularly within the province of the trial judge.'").

It seems clear, however, that Meza's focus for Ground Two is on counsel's actions in conducting *voir dire* and how counsel may have denied him the right to a fair trial. Thus, the Court turns to the merits of Meza's ineffective-assistance claims.

## II. Ineffective Assistance of Counsel

In both Grounds One and Two, Meza seeks relief on the basis of his trial counsel's ineffectiveness. In Ground One, Meza contends that trial counsel was ineffective for not objecting to the admission of Aguilar's recorded statements. In Ground Two, he argues that trial counsel inadequately questioned the *venire* about anti-gang bias, resulting in the possibility that some biased jurors were seated. The state courts rejected both claims primarily on the basis that the evidence against Meza was significant, and thus counsel's errors could not have prejudiced him.

Under AEDPA, "ineffective assistance of counsel is a mixed question of law and fact reviewed *de novo* with a strong presumption that the attorney performed

effectively." *Allen v. Chandler*, 555 F.3d 596, 600 (7th Cir. 2009). To establish ineffective assistance, a petitioner must show both that his counsel's performance fell below an objective standard of reasonableness under prevailing professional norms, and that the deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 688–93 (1984); *see Ebert v. Gaetz*, 610 F.3d 404, 411 (7th Cir. 2010). "Judicial scrutiny of counsel's performance must be highly deferential." *Strickland*, 466 U.S. at 689. A *habeas* petitioner "must do more than show he would have satisfied *Strickland*'s test if his claim were being analyzed in the first instance. . . . [H]e must show that the [state court] applied *Strickland* to the facts of his case in an objectively unreasonable manner." *Emerson v. Shaw*, 575 F.3d 680, 685 (7th Cir. 2009) (internal citation marks omitted). Simply put, the court's decision must be "well outside the boundaries of permissible differences of opinion." *Hardaway v. Young*, 302 F.3d 757, 762 (7th Cir. 2002).

### A. Ground One

As to Ground One, the Illinois Appellate Court reasoned that Aguilar's statements should not have been admitted at trial, citing to Illinois cases interpreting the Confrontation Clause and *Crawford v. Washington*, 541 U.S. 36 (2004). *See* Resp't Ex. A at 7 (citing *People v. Robinson*, 909 N.E.2d 232 (Ill. App. Ct. 2009); *People v. Feazell*, 898 N.E.2d 1077 (Ill. App. Ct. 2007)). Under *Crawford*, statements that are "testimonial" in nature and that accuse the defendant of wrongdoing cannot be admitted through hearsay, unless the speaker is unavailable and the defendant has had an opportunity for cross-examination. *See* 541 U.S. at 59.

Respondent argues that counsel's performance in not objecting to Aguilar's statements was not deficient, pointing out that "the Confrontation Clause does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted." *Williams v. Illinois*, 567 U.S. 50, 69 (2012) (quoting *Crawford*, 541 U.S. at 59–60). Since Aguilar's statements were admitted merely to show Meza's pathway to confession, Respondent argues, they were not admitted for their truth. The Court agrees and concludes that, under *Williams*, counsel's performance was not constitutionally deficient.

Additionally, as the Illinois Appellate Court correctly observed on direct review, any prejudice that Meza may have suffered as a result of the playing of his video statement was minimal at best. "The prosecutor did not refer to Aguilar's accusations, much less suggest that they were substantive evidence of defendant's guilt. As the State point[ed] out, Aguilar's implication that defendant was the shooter is inconsistent with the State's theory of the case, that defendant was guilty by accountability . . . ." Resp't Ex. A at 7. The state court continued, "[T]he primary import of the video was defendant's own relatively detailed confession. It is virtually inconceivable that the jury would ignore defendant's own admissions and convict him on the basis of Aguilar's implication. As noted above, the State did not dwell on the evidence or suggest that it substantively proved defendant's guilt. In fact, it tended to negate the State's theory that Ruiz was the shooter and defendant was merely an accomplice." *Id.* at 7–8.

What is more, the Illinois Appellate Court reasonably observed that the overwhelming evidence in the case established Meza's guilt. In so concluding, the Court rejects Meza's challenge to the state courts' analysis of the facts. He argues that the courts mischaracterized the statement he made to police and that the only evidence of his guilt was his mere gang affiliation.

The Illinois Appellate Court, in concluding that the evidence against Meza was overwhelming, characterized Meza's confession as follows:

> Based on an informant's tip, police arrested defendant, and he gave a recorded statement. Defendant drove Aguilar into Latin King territory. He knew that Aguilar had a gun. Defendant and Aguilar tried to get into an apartment building, but the door was locked. Defendant then followed Aguilar and saw him shoot toward a group of people near a window. Aguilar then ran away. Defendant drove Aguilar away from the scene. When defendant dropped him off at home, Aguilar kept the gun. Defendant returned to the area and wrote the graffiti because he was a better "tagger" than Aguilar.

Resp't Ex. B at 3. Meza, however, points out that he actually stated several times that he never saw Aguilar shoot through the window.

The state courts' findings of fact are entitled to substantial deference. *Brumfield v. Cain*, 135 S. Ct. 2269, 2277 (2015). Moreover, after a review of Meza's recorded confession, the Court concludes that the state courts reasonably found it to affirmatively establish his guilt. Meza is correct that, at several times, he stated that he did not see Aguilar shoot through the window. But at other points, he describes where Aguilar shot and from what angle. *See generally* Resp' t Ex. U, Videotaped Confession. He also admits other information supporting his guilt—for instance, Meza explains that he knew Aguilar had a gun, that they purposely went into Latin

16

Kings territory to look for rival gang members, that he thought Aguilar would bust down the apartment door and start shooting, and that he drove Aguilar away and dropped him off at his home after the shooting. *See generally id.* Meza's confession, particularly when corroborated by other evidence such as his gang affiliation and the graffiti he drew after the fact, overwhelmingly established his guilt. *See People v. Murray*, 626 N.E.2d 1140, 1146–47 (Ill. App. Ct. 1993).

Accordingly, the Illinois Appellate Court's conclusion—that the evidence against Meza overshadowed any error made by counsel—was a reasonable application of *Strickland*, 466 U.S. at 688–93. Ground One therefore fails both as an ineffective-assistance claim under the Sixth Amendment and as a basis for cause and prejudice to overcome Meza's procedural default of his underlying substantive claim.

### B. Ground Two

As to Ground Two, the trial court on postconviction review concluded that trial counsel was ineffective for failing to probe adequately into anti-gang bias during *voir dire*, but found that any deficiency was harmless given the evidence. The appellate court affirmed, concluding that the lack of prejudice eliminated any cause for concern regarding counsel's performance.

Respondent argues that defense counsel effectively conducted *voir dire*, and Meza certainly devotes a great deal of energy to arguing that counsel drastically mishandled his questioning of the prospective jurors. But, for reasons already explained above, even if counsel's performance had been deficient, the substantial evidence of Meza's guilt outweighs any prejudice that he may have suffered as a

17

result. In reaching this conclusion, the Illinois Appellate Court reasonably applied *Strickland*, 466 U.S. at 688–93. Ground Two therefore fails both as an ineffective-assistance claim under the Sixth Amendment and as a basis for cause and prejudice to overcome Meza's procedural default of his underlying substantive claim.

## Conclusion

For the reasons provided, Meza's petition for *habeas corpus* is denied. The Court declines to issue a certificate of appealability. Meza has not made a substantial showing that reasonable jurists could debate whether his motion should have been resolved in a different manner. *See* 28 U.S.C. § 2253(c)(2); *Narvaez v. United States*, 674 F.3d 621, 626 (7th Cir. 2011) (citing *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000)). Civil case terminated.

**IT IS SO ORDERED.**　　　　　　　　　ENTERED: 6/6/19

　　　　　　　　　　　　　　　　　　　　　　　　／s／ John Z. Lee

　　　　　　　　　　　　　　　　　　　　　**John Z. Lee**
　　　　　　　　　　　　　　　　　　　　　**United States District Judge**